961 F.2d 1579
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee
v.
Emmanuel N. MONYEI and Victor Onwujekwe, Defendants-Appellants.
 Nos. 91-1780, 91-1781.
 United States Court of Appeals, Sixth Circuit.
 May 6, 1992.
 
 Before KEITH and MILBURN, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendants-appellants, Victor Onwujekwe ("Onwujekwe") and Emmanuel Monyei ("Monyei"), were arrested and charged with conspiracy to distribute heroin in violation of 21 U.S.C. §§ 841(a), 846. On November 29, 1990, indictments were returned charging Onwujekwe and Monyei with one count of conspiracy to possess with intent to distribute and to distribute heroin, in violation of §§ 841(a), 846. Count two charged Onwujekwe and Monyei with distribution, in violation of § 841(a)(1). Both Onwujekwe and Monyei pled guilty to count one in Rule 11 Plea Agreements. The plea agreements incorporated the "Overt Acts" section of count one of the indictment which makes express reference to a quantity of nine ounces of heroin.
 
 
 2
 Following the June 20, 1991, sentencing hearing, the district court sentenced Monyei to 91 months imprisonment followed by four years of supervised release and Onwujekwe to 78 months imprisonment followed by four years of supervised release. For the reasons set forth below, we AFFIRM the sentences imposed by the district court.
 
 I.
 
 3
 The facts are derived from testimony at the sentencing hearing. Kenneth Johnson ("Special Agent Johnson"), a special agent for the Drug Enforcement Administration ("DEA"), testified that he worked with a confidential informant, Jerry Montgomery ("Montgomery") in this criminal investigation. On November 12, 1990, Montgomery provided the DEA with six ounces of heroin which he claimed to have received from Onwujekwe and Monyei. Montgomery originally stated that he received only the six ounces of heroin from Onwujekwe and Monyei.
 
 
 4
 In a later meeting with Onwujekwe and Monyei, however, Special Agent Johnson testified that he discovered that Monyei had given Montgomery nine ounces of heroin. This realization surfaced when the four men began to negotiate the price of the heroin that Onwujekwe and Monyei had given to Montgomery. Onwujekwe and Monyei explained to Special Agent Johnson that the price was $6000 per ounce for a total of $54,000. Monyei wrote the $54,000 price on a small piece of paper and gave it to Special Agent Johnson. Later, Montgomery admitted that Onwujekwe and Monyei had given him nine ounces of heroin but that he had taken three ounces and sold them.
 
 
 5
 The Rule 11 plea agreements agreed to by both Onwujekwe and Monyei computed the base offense level at 30, criminal history category I, less two points for acceptance of responsiblity. This resulted in an preliminary guideline range of 78-97 months for both defendants. Note, Onwujekwe's plea agreement expressly provided that his sentence would not exceed four months above the lower limit of the guideline range imposed by the district court. Additionally, Monyei's presentence investigation revealed that he had an independent criminal history. This elevated Monyei's criminal history to category II, or a corrected sentencing guideline range of 97-108 months.
 
 
 6
 On June 5, 1991, Monyei's counsel filed an objection to the presentence report contesting the amount of heroin used to compute Monyei's base offense level. Onwujekwe was permitted to join in this objection and participated in the evidentiary hearing.
 
 
 7
 On June 20, 1991, the district court held the hearing to resolve the disputed issue pursuant to Fed.R.Crim.P. 32(c)(3)(D) and heard the above stated testimony of Special Agent Johnson. The district court determined that nine ounces of heroin was the basis of the criminal transaction and sentenced Monyei and Onwujekwe accordingly. A timely appeal followed. Central to this appeal is whether the district court's use of nine ounces of heroin in computing the defendants' base offense levels rather than the six ounces actually received by the DEA was proper.
 
 II.
 
 8
 For the purpose of sentencing, "findings of fact important to calculating a defendant's offense level or criminal history must generally be made by a preponderance of the evidence." United States v. Walton, 908 F.2d 1289, 1301 (6th Cir.), cert. denied, 111 S.Ct. 273 (1990). The factual findings of the district court under the guidelines are reviewed for clear error. Id.
 
 A. MONYEI
 
 9
 The district court found that the evidence did show that Monyei distributed nine ounces of heroin to Montgomery. The testimony of Special Agent Johnson regarding his negotiation meeting with Monyei, Onwujekwe and Montgomery on November 14, 1990, was sufficient evidence to establish the nine ounce quantity. The district court noted that it did not rely on Special Agent Johnson's hearsay testimony (i.e., Montgomery's admission to Johnson that he sold three of the nine ounces before turning six ounces over to the DEA.) Rather, the court used Special Agent Johnson's direct recollection of the events of the face-to-face meeting. Special Agent Johnson's hearsay testimony and Monyei's mathematical computation of the price were used to corroborate the nine ounce determination.
 
 
 10
 Monyei and Onwujekwe offered other uncorroborated testimony about the price term discussed to rebut the conclusion that nine ounces of heroin were involved. For example, discussion took place regarding the compensation for the couriers who brought the narcotics into the country. However, the price term of $74,000 ($14,000 for the couriers and $60,000 for the narcotics) remains unsubstantiated. The district court, therefore, could have properly rejected this proffer of evidence.
 
 
 11
 Monyei also argues that the nine ounce quantity was mentioned only in the second count of the indictment, which was dismissed pursuant to the plea agreement. This quantity, however, was explicitly referenced in the "Overt Acts" section of count one, the conspiracy count of the indictment. Furthermore, the Sixth Circuit has held that a court may consider quantities of controlled substances in counts dismissed pursuant to plea agreements as relevant conduct [U.S.S.G. § 1B1.3] upon a sufficient showing of reliability. United States v. Smith, 887 F.2d 104, 107-8 (6th Cir.1989).
 
 
 12
 We conclude that the plea agreement incorporated the nine ounces of heroin expressly referenced in count one of the indictment. The Overt Acts section of count one reads in pertinent part:
 
 
 13
 1. On or about November 9, 1990, EMMANUEL MONYEI and VICTOR ONWUJEKWE arrived in the metropolitan Detroit area, from Tennessee, in possession of approximately 9 ounces of Heroin to be distributed in the Eastern District of Michigan.
 
 
 14
 2. On or about November 9, 1990, EMMANUEL MONYEI and VICTOR ONWUJEKWE met with a Confidential Informant, in the Detroit area, and distributed approximately 9 ounces of Heroin to the Confidential Informant.
 
 
 15
 In the alternative, the district court could have certainly concluded that the nine ounce quantity of heroin is simply relevant conduct for sentencing purposes. U.S.S.G. § 1B1.3. Moreover, Special Agent Johnson testified from first-hand knowledge to the content of the price term discussions at the November 14, 1990, meeting. As the fact finder, the district court could also have accepted this testimony and concluded that the discussions centered around $54,000 and nine ounces of heroin. This finding was corroborated by Montgomery and the written price term of $54,000 provided by Monyei. Accordingly, the district court had sufficient basis upon which to conclude that nine ounces of heroin was the correct measure upon which to base a sentence.
 
 
 16
 Monyei's guideline range was increased because the district court determined that he had a criminal history of category II as of June 20, 1991, following the presentence investigation. Monyei has not contested this corrected history or range of 87-108 months. The district court sentenced Monyei to 91 months in accordance with his Rule 11 plea agreement which contained a four month cap above the lower limit of the applicable guideline range. Monyei received a fair evidentiary hearing in accordance with Fed.R.Crim.P. 32(c)(3)(D), and the district court had an ample basis upon which to find that nine ounces of heroin was involved in the criminal transaction. Accordingly, we reject Monyei's challenge to the sentence imposed by the district court.
 
 B. ONWUJEKWE
 
 17
 Onwujekwe joined Monyei's challenge to the nine ounce computation of heroin. The above analysis is equally applicable to Onwujekwe's appeal, and this challenge is likewise rejected.
 
 
 18
 Onwujekwe makes an additional argument, claiming that he was not present in Detroit when Montgomery obtained the nine ounces of heroin. Rebutting this contention, Special Agent Johnson testified that Onwujekwe made representations at the negotiation meeting of November 14, 1990, that he was present in Detroit when the distribution took place on November 9, 1990. Other evidence seemingly corroborated the presence of Onwujekwe in Detroit on or before November 9, 1991. For example, a piece of paper containing the telephone number of Montgomery's girlfriend who lives in Detroit was seized from Onwujekwe's belongings upon his arrest. Montgomery indicated to the authorities that he had furnished this number to Monyei and Onwujekwe on November 8, 1991, and they had contacted Montgomery at the girlfriend's house to arrange the November 9, 1991, transfer of the heroin.
 
 
 19
 Onwujekwe received a sentence of 78 months. This was in conformity with the Rule 11 plea agreement. Accordingly, we reject Onwujekwe's challenges to the sentence imposed by the district court.
 
 III.
 
 20
 For the foregoing reasons, we AFFIRM the sentences imposed by the Honorable George La Plata, United States District Judge for the Eastern District of Michigan, pursuant to Rule 11 Plea Agreements.